Good morning. Glad to see everybody. I guess you made it around the parade then, right? The first case is Ricks v. Shover, No. 16-2939. Good morning. Good morning. May it please the Court, I am James Crangill on behalf of the appellant, Mr. Gregory Ricks. I would like to reserve three minutes of time for rebuttal. That will be granted. The District Court's dismissal of Mr. Ricks' sexual abuse claim and excessive force claim should be reversed. Given that the scope of disagreement is a bit narrower on the excessive force claim, I propose starting there and then we can discuss the sexual abuse claim. On the excessive force claim, there are really two points I would like to emphasize from the briefing. The first is that Mr. Ricks complied with the officer's instructions in all instances. From the moment he was asked to submit to a pat-down search to when he was led back to his cell being showered with racial epithets, at no point did he ever resist the officer. But we don't have that before us. Do we really need to focus on the complaint, don't we? Yes, and that is in the complaint, though. Okay. But the complaint really describes what happened to him, correct? Yes. On the excessive force claim, he was slammed into a wall after taking one step and only one step away from an officer that at the time was sexually abusing him. Okay. So to the second point that I would like to emphasize is that the government's argument here really relies on a series of negative inferences that are not appropriate at this stage of litigation. Of course, you're entitled to positive inferences, right? Yes, absolutely, and particularly because it is a pro se plaintiff. Such as that there was no need to restore order, et cetera, et cetera? Correct. And that's not part of what we're going to be looking at, is it? Well, that is a part of the Smith v. Messenger factors that are assessed. But, I mean, it's not before us because on the face of the complaint, we don't have that. Well, he has stated an excessive force claim, and so to evaluate whether he has stated a claim, we have to determine if the facts alleged show a lack of need to use force, which I submit is the case here. Because going back to the first point I'd like to emphasize, he at no point resisted the officers. There was no need to slam him into the wall when he was slammed into the wall. Because really all he had done, the only action Mr. Ricks took here that was not at the direction of an officer was ending the sexual abuse by taking one step away and then explaining why he took that step away. And that is simply not a basis to slam someone into a wall. Okay. My point is that to the extent that the government says, well, there's a need to restore order, the face of the complaint doesn't reflect that there would be that need. Correct. Yes, I would agree with that. Okay. And then on the negative inferences point, I think this is most important to the injury element of the Smith v. Messenger facts, where the government argues that the injuries alleged in the complaint are simply implausible. And I would just state very clearly that that is not an appropriate method of analysis at this stage of litigation. After discovery, that may be a defense they want to assert, but here we have a complaint that must be assumed to be true. On the sexual abuse claim, we're talking about an Eighth Amendment cruel and unusual punishment test. We haven't really spoken to this issue very clearly. The district court relied upon an NPO that said one instance may not be enough, but there's been a lot of case law. There's been a lot going on lately having to do with abuse claims. What would you say is the test that we should adopt? So I think this court should adopt the test from the Second Circuit, which is whether there's to analyze whether there's a A Crawford one? Yes, a Crawford, which is to analyze whether there was a penological purpose to the sexual abuse alleged. But that can't be the only thing we look at. I mean, there's supposed to be an objective prong and a subjective prong. So, I mean, Crawford seems to raise the subjective prong to be the only test. But don't we at some level look at what happened and say objectively, is this repugnant to society as a constitutional matter? Yes, that is what this court needs to say. So how does this meet that test? I mean, so many of the cases have to do with following of the genitals and purposeful conduct that objectively seems repugnant. Here it seems to me to be a little bit of a lesser offense from an objective standpoint in that it was momentary and avoided, isolated. It was through clothing. It was an erection and not something that would be other than that. It just seems to me to be a little bit different. Could you address that? So I think the answer to your question is ultimately what is the modern standard of decency regarding sexual abuse of inmates? And the Second Circuit's position on this, their holding, is that the answer is zero tolerance. And that is why assessing whether there's a penological purpose, I mean, that is essentially a shortcut to both those prongs you identified. Penological purpose, if there is no penological purpose, that shows us that on the subjective prong, you know, there's no justifiable intent behind this abuse. Now, on the objective prong, it gets there because if there's no penological purpose, it really establishes that this is sexual abuse. And in a world where the modern standards of decency is zero tolerance, that means you've satisfied the objective prong of the Eighth Amendment cruel and unusual punishment test. I'm just not sure the practical implications of that in the prison setting. I understand what you're saying, that zero tolerance in this day and age may be aspirational. Maybe it's something we should adopt. I'm just not sure that in a prison setting, everything, everything is abusive. So I think the answer to your concern is really in the subjective side of it rather than the objective. And this, again, goes back to if there's a penological purpose. You know, if there were some intent or some reason to do the alleged abuse, which, as you said, is, you know, in most cases, this is about an officer's hands making contact with inmate's genitals. You know, there, you know, there is a penological purpose to that. And so we have reason, based on that allegation alone, to doubt that there isn't, that this is actually abuse. That this is, what's really happening in those instances is the officer is searching for contraband, which is entirely justifiable. And I think... Well, but the cases, the fact pattern in the cases is not really searching for contraband. I mean, the facts are such that it's truly gratuitous, is it not? Most of the cases we've seen. I mean, if there is a penological purpose, then it passes muster. I mean, in cases where it's been found abusive, it's clearly gratuitous. Here, we really don't know that much about that aspect. So in Crawford and Bodie, which Crawford said would be decided differently today, there, you know, there were other facts that made clear that the fondling was, you know, beyond the scope of the legitimate purpose. Right. But that kind of makes my point, though, because that's, you know, those are probably your... That's the most common situation where you're going to have something that is, you know, if anyone in another setting did that, it would be sexual abuse. But because of the context of it happening, of how that happens, we have reason to doubt that it's sexual abuse. So you aren't creating this slippery slope where now everything that's alleged to be vaguely sexual is going to be able to pass a motion to dismiss stage. You know, in this case, you know, we aren't dealing with fondling. We're dealing with an officer rubbing his erection against an inmate. And, you know, that is... I mean, there is simply no purpose to that. And that, at minimum, you know, in light of a modern standard of decency of zero tolerance, is enough to infer that the officer was acting with something other than penological intent and that sexual abuse had taken place. Following up on Judge Rendell's question and actually picking up on an argument made by your adversary, I mean, is this going to... If we adopt what you're proposing, is that going to open up the doors to a lot of lawsuits? I don't think so, for two reasons. One, I mean, just review the case law as far as I can tell. There are not many complaints claiming that officers are rubbing their erections against inmates. The more common situation is a pat-down search where... And, you know, you could have a, you know, a male guard rubbing up against a woman and up against her breast and, you know, walking by her and a zero tolerance is going to say, come into court and sue. And I'm not saying that's wrong or right, but it raises a question as to the implications as a practical matter. No, I understand that. Prisoners are litigious. Yes. And I'm not saying that they're wrongly litigious, but it's just a fact of life that we see a lot of prisoner cases, some of them justified, some of them not. I actually think that helps my point, though, because given how litigious that inmates may be, if this was happening more frequently, you would think you would see more cases where this is the fact pattern at issue. And that simply, at least as far as I can tell, is not the case. Although it's, you know, just commentary of the last four months. Sure. Wouldn't you have thought two years ago that you would see a lot of lawsuits? All of a sudden, it's really become a zero tolerance and people coming forward with it as they didn't before. I mean, I think that it is certainly more prevalent and we are more aware of that in the past several months, though the Second Crawford was decided well before the more recent developments in this area. And there it pointed to the Prison Rape Elimination Act passed by Congress, and it passed through the acts of 48 states that criminalize, not just makatory defense, but criminalize sexual contact between inmates and corrections officers. And so I think that there's a good basis for that. Is your position that a standard should either not have an objective component to it, or if it did, it would always be satisfied? So my position is the second. It's that in the context of sexual abuse, any sexual abuse satisfies the objective standard of the Eighth Amendment test. In light of, you have to remember, the objective problem of cruel and unusual punishment is analyzed in light of modern standards of decency, and the modern standard of decency on sexual abuse of inmates is zero tolerance. In the non-sexual abuse area, though, there is a sliding scale based on extent, duration, and all different factors. Here there would be none, as I take it. Yes, there would be none, and I think that's consistent with Crawford and Voti, both of which contemplate, Crawford contemplates the very situation in this case where it says that an officer rubbing their, making contact with a genitalia of an inmate is self-evidently a violation of the Eighth Amendment. But then Crawford also goes on, and it says that even sexual contact, the sexual contact that the woman in that case uses, that is brief through clothing, can constitute an actionable Eighth Amendment claim for sexual abuse. And that, well, that's, it seems to me that statement is a little bit different from what you've just articulated, can be. I'm not sure, I'm not sure I understand. Well, does that mean, is there a difference between can be and would be in all instances? If there's no penological interest, is that? If there's no penological interest, then it is, it would be actionable. Now here, you would say that this would go past the dismissal stage, but if a case were made that Mr. Ricks was shouting, you're up my, you're on my ass, or whatever, and there was a need for order to be maintained, that there was a penological, well, no, there's no penological interest in that direction. Yeah, I think it would go to the excessive force. Yeah, exactly. Yeah, that would be. Did I interrupt you, Judge Sorrentino? No. Do you have another question? I just, to make sure I'm understood there is, as I read Crawford, what it is saying that even in situations where the contact is brief and through clothing, that is an actionable Eighth Amendment claim for sexual abuse in light of the modern standard of decency on sexual abuse. So it is a zero tolerance on the objective factor? Yes. And all you look at is was there a penological interest? Yes, because if there is no penological interest, you've satisfied both elements of the Eighth Amendment test. All right. Thank you, counsel. Thank you. May it please the Court. I'm Claudia Tesoro from the Attorney General's Office, and I represent two individuals, Correctional Officer Paul Kyle and Lieutenant David Shover, in their individual capacities. And I go to length on that because I think calling our side the government is a little inappropriate. But you are the Attorney General. I work for the Attorney General's Office, yes, but the defendants in the case are two individuals. The question, as this Court put it in its March 3, 2017 order, is whether the alleged sexual abuse rises to the level of cruel and unusual punishment. And I think the dialogue that's already occurred reminds us of the difficult standard that was always presented in an Eighth Amendment case because of the two-prong analysis and so on. This case, as pled by Mr. Ricks and as discussed already, clearly involves a single incident. And we have emphasized that it is possible, we understand that it is possible, for there to be an actionable Eighth Amendment sexual abuse claim based on a single incident. But not every incident, even if based on conduct that is arguably inappropriate, amounts to a constitutional violation. So it's up to this Court to decide what crosses the line between inappropriate and repugnant. Well, that's a very dramatic and subtle way of describing the Court's job. And maybe you would look at this differently from the way you'd look at it even six months ago. It's very striking to me that we're in February of 2018 in an atmosphere that's very different from, say, September of 2017, let alone back when this occurred. Right. I think that brings up a couple of reasons why we have to be very deliberate about this. The Crawford case was decided after the events here and after several of the cases that both of us have, both sides in this case, have discussed. But all the cases tell us that context matters, and I'm including in that statement Crawford, because I disagree with my learned adversary that there is a strict liability standard here, essentially. I don't think that's correct. I don't think the objective prong of an Eighth Amendment case can be met automatically. Crawford itself says that the principal inquiry, quote-unquote, is whether a defendant's alleged contact was, quote, it's necessary to look at the vermins that the plaintiff has put forth. Well, but then they say, such as a justifiable path risk or strict search. Right. We're still talking about looking at peniological purpose, though, right? I don't hear the other side saying that we don't consider that. You said strict liability, but... I think he went further with that than I almost expected him to, to be honest. But, yes, peniological purpose underlies everything that happens in a prison, or should. But here, there's no question that the incident, such as it was, occurred during a pat-down search during the lying movement at SCI Gradoford. There's nothing unusual about that. For the pat-down search to be required was incidental to a legitimate peniological purpose for sure. To do a pat-down search, an officer has to be close to the inmate, obviously. Otherwise, you can't pat the inmate. We have to accept, because it's in the complaint, that Mr. Ricks says he felt the officer's penis rubbing against his bottom. But that doesn't alter the fact that whatever was going on and whyever there was an erection to be felt, the moment giving rise to this lawsuit was incidental to Officer Kyle's duties. We also have to accept the fact that the minute Mr. Ricks became aware of this and disturbed by it, he stepped away and that was the end of the rubbing. It was a very brief encounter. The decisions that this court has issued to Deed, as was pointed out... Let me just, if you could just stop for a sec. So you're saying that the sort of fleeting nature of this, in addition to it being a one-time, I guess, allegation of sexual abuse, takes it out of the Eighth Amendment completely? I'm saying that it would be awfully hard to think of a case equally fleeting that would amount to an Eighth Amendment violation, given all the other things that are not in dispute because they're based on the complaint, the line movement, the fact that the clothing was on, and so on. The case law that has come out of this circuit so far, before and after Crawford, Hughes, Obiegbu, Chavez, and most recently Banks, all fall into this analysis that I'm offering to you about the incidental to an officer's duty. And I think Banks, which is only one of those four cases that was issued after Crawford, is perhaps the most informative. Because in Banks, the court declined to find a violation and distinguished Crawford, stating that in the Banks scenario, the manner, timing, and stated reason for the search all indicated that it was not a pretext for seeking sexual gratification or humiliation. How does one infer that an officer is seeking sexual gratification or to humiliate an inmate, which is what Crawford seems to say is a factor in differentiating between incidents that are actionable and incidents that are not? In this case, the manner, timing, and stated reason for the search that occurred do not give rise to a plausible inference that Officer Kyle was trying to obtain gratification for himself or that he was trying to humiliate Mr. Briggs. I think Mr. Briggs might say that. In fact, I think in the brief it probably does say that. But where does that come from? Unless every single act, due to this evolving standard and awakening that we're all going through, means that the objective criterion is met in all prison cases. But do we know enough to say that this case doesn't satisfy the plausibility, if you will? In other words... I think that this is one of those situations where, well, first of all, and this applies to both of the claims in this case, Mr. Briggs had an opportunity to amplify his original allegations, and for whatever reason he decided not to. Well, maybe he gets a witness who is going to testify that the way this was done, I mean, he's not going to know because he wasn't facing him and he couldn't observe it. But it's plausible that this was done from the standpoint of seeking to humiliate and gratification. I don't agree. In the context in which this occurred, as inmates were moving from one area of the prison to another, and it wasn't just Mr. Briggs, in the line movement, the notion that it isn't plausible, in my opinion, to infer that an officer's contact was intended to gratify the officer. Kyle called me over. Well, that's because in the line movement, the inmates start out in the line, and some of them are called over for a search. They don't search every single one. That would take all day. And that's just the reality of where and when this particular alleged incident occurred. I also ‑‑ It was followed with Shover arguably overreacting here, maybe in a way that was defending Kyle. I mean, you're drawing inferences one way, and they might be able to be drawn the other. I'm not talking about Lieutenant Shover yet. I know you're not, but he asked him to repeat, and he said, Kyle is rubbing up against my behind with his genitals. And Shover said, what did you say? Then I said, and he repeated it, you put the picture together, and perhaps Shover is protecting Kyle. We can't read their minds. I agree with you on that. I know we can't, but we can't also say that this is absolutely innocent conduct. I think that the question is not whether it was absolutely innocent. The question is whether it was incidental to the officer's legitimate duties considering the manner, timing, and stated reason for the patent search. But there can be abuse that is incidental. Not only did he do this, but he reached in farther, did something else, and it's incidental to his duties because it's patent frisk. Do we give him a bye just because he's got to frisk somebody going to the law library? I don't think that's what I'm saying. I'm curious as to how the incidental gets you home free. No single thing gets anybody home free in this business. No, but you're saying that if it is incidental. If it's incidental, and if considering the entire context, it is a single incident without adverse consequences and so on. This court has used that kind of language in its previous cases. What presidential opinion of our court provides the standard? There is no presidential opinion. I totally understand that. But I think that since we don't have a presidential opinion in this court, we have to look at what we do have. We can also look at the Crawford case, which I simply don't agree is applicable because the facts presented there, which were quite extreme, involved two different people and a whole number of incidents and a history of complaints. Of course, the potential severity was different. It's a different case, clearly. But how about analytically? It does set forth a framework. Do you disagree with the framework it set forth? I don't. I am willing to agree with the framework in a very general way, but I'm not willing to agree that the framework fits this case because the framework entails analysis of context, and the context was applied differently there than it could possibly be applied in a single case. Well, then, if you're analyzing context, don't you at least get past the dismissal stage? There's a plausible case averted here, and then you need to judge the context after you've denied the motion to dismiss. I think you have to look at the context as best you can given the complaint, and the complaint here is definitely limited. I'm not able to suggest it. But a pro se person still has to meet the Twombly plausibility standard, and here we have a pro se individual alleging one fleeting incident that was not in the shadows or... But if it's totally gratuitous... But it wasn't, as far as we can tell. Well, maybe it was as far as we can tell. Why would there be a need to do that? The only way to... There would not be a need to have your erection rubbed against an inmate, but there would be a need in this context to rub against the inmate as you conduct a search. And if you happen to have an erection, which we have to accept he had, we don't know if that erection came because he was dreaming of his girlfriend or whatever. We don't know. How can we... How can there ever be a case where an inmate who says the officer had an erection can be put out of court on a motion to dismiss? Let me ask you this question. On the facts of this case, and if we assume there's no peniological purpose, it would seem that this matter could not be decided on summary judgment. It would have to go to trial. Is that right or not? No, I don't think so. We don't look at whether there was a peniological purpose to the rubbing alone. We look at whether there was a peniological purpose to the scenario described. Maybe I didn't explain it correctly. Assuming also that there is no objective test. If there is no objective test, all bets are off. You automatically get to try. It can't be decided on summary judgment. Right, but there is an objective test. There's an objective factor in all cases, including Crawford. I mean, there is no way to assume that the objective requirement has gone out the window in light of Crawford or for any other reason. There has to be an objectively serious incident, and I'm arguing that this incident, even if Mr. Osterwald had an erection and rubbed, as Mr. Ricks alleges, the objective picture that is painted of the entire incident does not rise to the level of an Eighth Amendment violation, because if it does here, there is no case where it won't. Let me ask you, if I may, what is your position on the excessive force? Well, I have to be straightforward and say that context matters in an excessive force case, too, as the Smith decision makes clear, and we don't have a whole lot to go on here. The word slam is a big problem for the defense, I have to admit, and I think that's why my policy... And also the listing of all the injuries. I mean, it's hard to get around, you know, busted nose, busted lip, in paragraph three here, but he lists all these injuries. The injuries, the only... I mean, it's hard to say at this juncture, right, that... The only comeback I have, as far as injuries are concerned, is that it's hard to imagine how one slam in one direction could injure so many different parts of the body at the same time. Depends how hard the slam is. I suppose so. But I understand that the allegation of the injuries is there, and it's pretty clear it's not like some of the other allegations that are subject to interpretation. I appreciate your candor. I appreciate your appreciation. If there's any further questions, of course, I'll answer them, but otherwise, thank you very much. I think that's it, counsel. Thank you so much. Thanks. So you're suggesting a strict liability test? No. I'm suggesting an analysis of whether there was a phenological purpose to the alleged conduct. How do we do away with the objective prong of the test? That's essentially what you're doing. You're saying it goes out the window because it's zero tolerance, so we do not look at the severity. I'm not saying the objective prong is out the window. I am saying that the objective prong must be assessed in light of contemporary standards of decency. If those standards are zero tolerance, then that means that sexual abuse is objectively serious harm. But you're saying everything that could ever be deemed to be repugnant, whether it's inappropriate or whatever, it satisfies the objective test. So there really isn't a test. Well, all sexual abuse is repugnant to moral decency. But abuse is putting the rabbit in the hat. So the dispute then becomes about what is sexual abuse, and I think this is where it becomes helpful to assess if there's a phenological purpose to the acts involved. As your colleague notes, whether this is purposeful. Yes. A large part of my colleague's argument is that this may have been an incidental brushing. Let me point to three things in the complaint that at least provide a basis to infer that it was not. First, he had an erection, which suggests some state of arousal and perhaps pleasure. Second, he was rubbing. Rubbing your erection against someone is not an allegation. It's seen in some of the other cases, such as brushing. I think in Bodie, for example, I think the description there was that the corrections officer brushed against the inmate. But if you're engaged in a patent search, you're probably going to rub, not brush. If you're coming up to frisk someone. I'm not sure that that is the case. At least at this stage of litigation, we would have to infer that it's not. And the third thing we have on the intent is Mr. Ricks' immediate reaction. It wasn't as if, you know, Mr. Ricks clearly interpreted this as the officer trying to humiliate him or obtain sexual pleasure from him in front of other inmates. It is not helpful to the defendant's case that this was done in public. Can I ask you a question? I was a little unsure about. Mr. Sherber, is he part of your claim for sexual assault? In other words, your claim for sexual assault against him. He wasn't involved in any of the touching. I understand he was involved in the excessive force. But I read some of your briefs as to maybe involved in that as well. So I think Lieutenant Sherber is a part of, but not a necessary part of the sexual abuse claim. And the way he is a part of it is that he essentially heightens the harm that follows from sexual abuse. In that, you know, Mr. Ricks has identified that he's being sexual abused through the hallway full of inmates. And then Lieutenant Sherber comes over and, you know, one of the principal harms from being sexually abused is humiliation. Lieutenant Sherber doesn't stop the incident and doesn't do anything other than reinforce what's happening and then punishes him for explaining what happened. And that is, in that way, he becomes a part of the sexual abuse by reinforcing the harm that's being created by the sexual abuse. And so I understand. How do the racial epithets work into the analysis, if at all? So I think that they work into the fifth factor of the Smith test, which asks, did the officers do anything to try to de-escalate this? Did they try to do something other than use force? And the racial epithets, I think, show they did the exact opposite. They only made the situation worse. And so that is how I think it factors in. The last thing I would like to add is the concern that we're doing away with the objective test. This is the language I think is most helpful to me from Crawford on this, where it states, and this is in its assessment of one of the claims, where the claim was, this is by Crawford himself, there are two plaintiffs in Crawford. In Crawford, the officer is alleged to be groping him and states several things that are made clear that he's trying to get pleasure. The decision in Crawford states, quote, no amount of gratuitous or sexually motivated fondling of an inmate's genitals, end dash, even if limited in duration or conducted through an inmate's clothes, as it were in the case here, is permitted by the Constitution. I think that makes clear where at least the Second Circuit stands on the objective problem of sexual abuse. Okay, thank you, counsel. Thank you very much. We'll take the case under advisement. And we want to take a special moment to thank Appellant's counsel, who he and his law firm took this case on pro bono. The court appreciates that, and we hope that Mr. Ricks understands what excellent counsel he had in this case. So thank you for both counsel. And if we can go off the record for a minute, we'd like to meet you at Sidebar and greet you in a more personal way.